### CAHILL v. HEUSER et al.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. BUILDING CONTRACT—SUBSTANTIAL PERFORMANCE—WHAT CONSTITUTES.
   Plaintiff agreed to build the foundations of three houses for $480; that the bottom stone should be laid according to the usual building regulations; and that the cesspools should be cemented throughout. The bottom stone was not of the size called for, nor in accordance with usual building regulations; and plaintiff used dry mason work in the cesspools, instead of cement. Defendant had to spend $30 in cementing the bottom of the cesspools, and then the building department refused to pass them, unless they were rebuilt, which would cost $90. *Held*, that there was not a substantial compliance with the contract.

2. SAME—FAILURE TO PERFORM—WAIVER.
   Plaintiff contracted to build the foundations for three houses for $480, but failed to perform the contract in material particulars. Before plaintiff had done the work, defendant gave him $200, on the representation that one of plaintiff's men was in pressing need of money. Defendant afterwards made a second payment on plaintiff's representations that the

work was all done, and on his giving a bond that the walls would last; but defendant had not accepted the work or promised to pay therefor with knowledge of the facts. *Held,* that there was no waiver of the failure of plaintiff to perform the contract.

Appeal from court of common pleas, special term.

Action by Thomas Cahill against Katherine Heuser and William G. Mulligan to foreclose a mechanic's lien. From a judgment entered on a decision of the court in favor of plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Henry A. Forster, for appellants.
John E. Eustis, for respondent.

BARRETT, J.   This is an action to foreclose a mechanic's lien. The plaintiff, Cahill, made an agreement with the defendant Mulligan to build the foundations of three houses on lots belonging to the defendant Heuser. The contract price was $480. Cahill agreed that the bottom stone should be laid according to the usual building regulations. He also agreed that the cesspools should be six feet square and eight feet deep, and that they should be cemented throughout, and covered with a brick arch. The evidence is all one way that the contract was not performed with regard to these two essential matters. The plaintiff admitted that the bottom stone which he laid was not in accordance with the usual building regulations. It was not of the size called for, nor was it laid as provided by law. He also conceded that the cesspools were not constructed as required by the contract. He sought to evade the consequences of these defaults by attempting to show Mulligan's acquiescence. The evidence, however, was insufficient to establish acquiescence. As to the bottom stone, he made no pretense of compliance with the precise terms of his contract. All he claimed was that the stone was such as he usually furnished, which amounted to saying that he was in the habit of disregarding the building regulations established by law. As to the cesspools, while admitting that he had used dry mason work instead of cement, he at first insisted that this was because of a parol modification of the contract, agreed to by Mulligan. Upon further examination, however, he conceded that he was to do all that was called for in the contract. It is clear, upon all the testimony, that the contract was not varied in this particular, and that the contract price covered the walling in of the cesspools, and "the cementing of the same fully throughout." He admitted that he had not built the cesspools according to the provisions of his contract. This was a failure to perform in a substantial matter. It resulted in a notification to Mulligan from the building department that the cesspools were not water-tight, as required by law. The consequence was that Mulligan had to spend $30 in cementing the bottoms of the cesspools. Even then the building department refused to pass them unless they were rebuilt, which will cause additional expense of some $90. Cahill positively

refused to do anything about the cesspools, and declared that he would not do another bit of work until he got his money.

It is impossible, upon the facts, to sustain the decision that there was a substantial compliance with the contract. It was, on the contrary, flagrantly violated. Nor can we uphold the judgment upon the claim of waiver. The testimony upon that head was introduced without objection. Consequently, the point that it was not pleaded will hardly avail. Conceding, however, that this testimony was properly considered, it entirely failed to establish a waiver. The claim of waiver rests mainly upon two payments which Mulligan made upon account. The first payment was a favor. The "pointing" was not then done, and, clearly, Cahill was not entitled to the contract price as upon complete performance. Mulligan gave him $200 upon the representation that one of his (Cahill's) men was in pressing need of money; Cahill stating that this workman had not a thing to eat in the house. As to the second payment, the testimony is overwhelming that it was made upon Cahill's representations that the work was all done, and upon his giving a bond that the walls would last. Mulligan never accepted the work, or promised to pay therefor, with knowledge of the facts. The burden was upon Cahill of showing performance or an actual waiver with full knowledge of the facts (Bank v. Mitchell, 73 N. Y. 414); and he failed to establish either.

It follows that the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.